COMMONWEALTH *v.* JOHN B. STEVENS ET AL.

[Abstract Kentucky Law Reporter, Vol. 2—315.]

**Petition for Damages.**

The Act of March 11, 1876 (I Acts 1876, ch. 657), gave to the owners of the locks and dams on Rough creek authority to sue the state for the loss of the value of their improvements, and gave the court or jury the right to fix the amount of such damages. They were restricted to a single cause of action sounding in damages, and gave them no authority to sue upon contract or for breach of contract.

**Powers of State Reserved in Grant.**

In granting a right to build locks or bridges or operate a ferry, or in granting other franchises, the state does not deprive itself of the power to construct other facilities of trade and travel, although the exercise of the power may result in individual loss and injury. By such a grant the state enters into no agreement, express or implied, that the rights of the grantee shall not be impaired or the profits of their franchise may not be lessened by future legislation or by other grants, and the state is not liable for damages to the holders of the first grant by reason of such legislation or other grants.

APPEAL FROM DAVIESS CIRCUIT COURT.

March 15, 1881.

OPINION BY JUDGE HARGIS:

By an act of the legislature approved March 8, 1856, a company was incorporated to build such locks and dams on Rough creek as

might be deemed necessary for its navigation. Any one or more individuals who should enter into a prescribed bond "shall be deemed the company and entitled to all the rights and privileges hereof." The company was to have power to condemn land and to be responsible for all the damages resulting from the erection of said dams; all the property belonging to the company was to be liable for its debts, or damages caused by the work; and it was authorized to receive such tolls as it might demand, "not exceeding those upon Green river, and at all times subject to the revision of the Board of Internal Improvement." The business of the company was declared to be the improvement of the navigation of Rough creek, and the erection and carrying on of such machinery and manufactures as they might build. The right was reserved to the state to buy the company's interest in the locks and dams by paying the original cost of the same, with interest. II Acts 1855-6, Ch. 459.

Under this charter a company was organized, who went on to construct a lock and dam, and perhaps other improvements. In February, 1866, James Ford sued the company to recover an alleged balance of about $3,600 for work done by him in constructing the lock and dam, and to enforce a lien therefor upon the property. Other creditors came in and set up their claims and liens. A receiver was appointed to collect the tolls at the lock, and on certain contingencies to lease it out to the highest bidder. It was accordingly leased at a rental of $30 for the first six months, and $22 for the next six months. On the 1st of October, 1867, the court rendered a judgment reciting and adjudging "that as the Rough Creek Nav. & Mfg. Co., have not the means to discharge its obligations, and the rents of the property will be insufficient ever to pay the same, it is therefore ordered that lock and dam No. 1 on Rough creek, together with all its fixtures and property, and all the corporate rights of said company under the charter, so far as the same can be sold by law, and the real estate incident or belonging to said lock and dam or said company, except the water power, be sold for the purpose of paying off the debts of the company, etc. On the 6th day of July, 1868, a sale of the property was made under this judgment, William Brown becoming the purchaser at the price of $3,200, who gave bond therefor with William Duke and J. B. Stevens, Titus Bennett and John B. Bennett, his sureties. The sale was confirmed on the 7th of October following.

On the 9th of March, 1868 (II Acts 1867-8, Ch. 1165), the legis-

lature incorporated the Green & Barren River Nav. Co., by which the "Green and Barren river line of navigation and their tributaries, together with the grounds, houses," franchies, etc., were "loaned and conveyed unto the corporators for  *  *  *  and during the term of thirty years from and after the time they get possession thereof." The 6th section of the act provides that all tolls shall inure to the company, establishes the rate of tolls on certain classes of boats passing each designated lock on the two rivers, and authorizing the company to establish tolls on the other boats, passengers, etc., from time to time, not exceeding the present rates established by the Board of Internal Improvements "as applicable to the Kentucky, Green, and Barren river lines of navigation at this time."

The company immediately took possession of the property and franchises so "loaned and conveyed." Afterwards the plaintiffs, John B. Stevens and others claiming to be the "present owners" of the improvements on Rough creek, holding that the act incorporating the Green & Barren River Nav. Co. gave that company "such franchises as were the cause of effectually destroying the value of their improvements on Rough creek, and making it worthless to them," and claiming finally that they were "entitled to damages from the state for the loss of their property on account of the legislation referred to," obtained the passage of an act March 11, 1876 (I Acts 1876, Ch. 657), which, after reciting the foregoing claims, authorized the plaintiffs to file their petition setting forth their demand for damages, the allegations to be treated as controverted and to be established by proof. If, on the hearing, it should be found "that the plaintiffs are the owners of the improvements on Rough creek, *  *  *  and that they are entitled, under the law and fact of the case, to damages against the state, for the loss of the value of their improvements, as recited in the preamble of this act," judgment therefore should be rendered against the commonwealth.

In April following the plaintiffs filed their petition. The court below overruled the demurrers, general and special, filed by the defendant, and, on the evidence, rendered judgment in favor of the plaintiffs for $4,928, with interest from July 12, 1877, to reverse. which the commonwealth has appealed.

By the terms of the enabling act, the appellees were required to establish, by appropriate allegations and proof, these propositions: First, that they were, at the time of the passage of the act, the

owners of the improvements on Rough creek; and second, that they were "entitled, under the law and facts of the case, to damages against the state, for the loss of the value of their improvements, as recited in the preamble of this act."

In their petition the appellees allege merely "that they are the owners and personal representatives of the owners, in part, of said property, as herein stated, and successors to said company." When or how they become either owners of the property or successors to the company is not shown. It appears, as already stated, that at the decretal sale reported by the commissioner in the case of Ford against the company, William Brown became the purchaser, and that Duke, Stevens and the two Bennetts were his sureties on the bond for its price. It is not pretended that the appellees acquired the title or ownership of the property otherwise than under this purchase; and there is a total failure of proof to show that Duke, Stevens or the Bennetts acquired any title whatever, either by purchase from Brown, or otherwise. It would seem to result that, having failed to establish their ownership of the property, they, at least, were not entitled to relief.

But, waiving this point, and conceding that Brown and his sureties became joint purchasers and owners under the decretal sale, the remaining inquiry is, Did they thereby become entitled under the law and facts of the case to damages against the state for the loss of the value of their improvements?

For the appellees it is insisted that the second section of the act (Acts 1867-8, Ch. 1165), incorporating the "Green and Barren river line of navigation and their tributaries, together with the grounds," etc., which were "loaned and conveyed" to that corporation for thirty years, was an election by the state to buy the improvements on Rough creek, under the right reserved in the act incorporating the Rough Creek Navigation Co.; that it was an absolute purchase and appropriation by the state of those improvements, the title of which vested at once, and that immediately upon the passage of the act authorizing the loan and conveyance, the state became liable, as purchaser, for the original cost of the same with interest from the date of the completion of the work.

If this proposition were conceded, it is not easy to see how it would help the claim of the appellees. If the state purchased their property on the 9th of March, 1868, and thereby acquired the title, and became at once liable for the cost of it with interest, what

possible title or right could the appellees have acquired by the purchase at the decretal sale of the same property on the 6th day of July, 1868? What was there for the commonwealth to sell or the purchaser to buy?

But there was no such purchase. The state, in loaning to the Green & Barren River Nav. Co., for thirty years, the Green and Barren river line of navigation and their tributaries, did not include and could not have intended to include the improvements on Rough creek. It included such tributaries of the two rivers as were within the control of the state, such as it had a right to lease or loan, and none other. Neither the state nor the Green & Barren River Nav. Co. ever construed the lease as embracing the lock and dam on Rough creek; no possession of them was ever claimed or taken; nor is it pretended that they were of any use or value whatever to that corporation.

Besides, the appellees asserted no claim founded on the supposed purchase by the state, either in their application to the legislature for authority to sue, or in their petition. Their claim as recited in the preamble of the enabling act (I Acts 1876, Ch. 657) was that the act incorporating the Green & Barren River Nav. Co. conferred on that company such franchises as caused the destruction of the value of their improvements on Rough creek, "making it worthless to them, and an obstruction to the natural navigation of said stream." The fourth section of the act provides that if, on the hearing, it shall be found that the plaintiffs are the owners of the improvements and are entitled to damages "for the loss of the value of their improvements, as recited in the preamble of this act" the court or jury shall "fix the amount of such damages" and render judgment. The authority of the appellees to sue is there restricted by the act to a single well-defined cause of action, sounding purely in damages, and necessarily excludes any cause of action arising upon the contract.

If it were conceded that the state was liable for the damages resulting from the supposed loss of the value of the Rough creek improvements, as recited in the enabling act, we are of opinion that the Rough Creek Nav. & Mfg. Co., and not the appellees, would be entitled to such damages. The alleged wrongful act of the state, the passage of the charter of the Green & Barren River Nav. Co., was done on the 9th of March, 1868. The corporation which made the improvements on Rough creek was undoubtedly the

owner of them at that time. True, there was then a judgment against the corporation for the sale of its property, but that judgment is no way divested or impaired of its title. The judgment was executed by the sale made on the 6th of July, 1868. What passed by that sale? Certainly not the right of action which had accrued four months previously to the corporation. Where real property, valuable chiefly for its improvements, is adjudged to be sold, and before the sale a wrongdoer wantonly destroys the improvements, would it be seriously contended that the subsequent purchaser would be entitled to the damages resulting from the injury, either upon the ground, as argued here, that the sale related back to the judgment, or that the purchaser was the successor of the original owner?

But we are of opinion that under no possible view of the "law and facts of the case" can the state be held liable, either to the corporation or to the appellees, for the damages resulting from the supposed injury.

It is alleged in the petition that at the time the charter of 1856 was passed, the state had control of the works on Green and Barren rivers, on which it had established certain rates of tolls; that in view of these privileges belonging to and used by the state, the investments on Rough creek were made, "and these were the inducements moving thereto, and these were the pledges made to said company and its successors by the defendant at the time of said investment," that in March, 1868, the state, in violation of said contract, leased to a company, then incorporated, the Green and Barren river line of navigation, with authority to charge higher rates of toll, which company, under the authority thus conferred, did lawfully charge boats running on Green river such rates of toll as to drive them from the trade on Rough creek, thereby destroying the value of the lock and dam on that stream.

The idea of contract or pledge arising, by way of implication, out of a grant like this, was effectually set at rest by the celebrated case of *Charles River Bridge v. Warren Bridge,* 11 Pet. (U. S.) 420, in which the legislature of Massachusetts incorporated a company, in 1785, to build a bridge over Charles river, granting them tolls. The bridge was built under this charter, and the corporation received the tolls allowed by law. In 1828 another company was incorporated to build the Warren bridge near the former over the same river. This bridge was allowed to, and did, become free after

a few years. The result was that the value of the franchise granted by the act of 1785 was entirely destroyed. In the suit brought by the Charles River Bridge Co. the principal ground of relief relied on was that the charter granted to Warren Bridge Co. was a violation of the contract implied by the grant to the former. "Its income," says the Supreme Court, "is destroyed by the Warren bridge; which, being free, draws off the passengers and property which would have gone over it, and renders their franchise of no value. This is the gist of the complaint. * * * In order, then, to entitle themselves to relief, it is necessary to show that the legislature contracted not to do the act of which they complain." But it was held that the charter contained no such contract on the part of the state, it containing no words that even relate to another bridge, or to the diminution of their tolls or to the line of travel, and that such an agreement can not be implied.

This court has distinctly and repeatedly approved this doctrine. In the case of the *Richmond & L. Tpke. R. Co. v. Rogers,* 1 Duv. (Ky.) 135, it was held that, in granting a ferry or other similar franchise, the state does not deprive itself of the power to construct other facilities of trade and travel, although the exercise of the power may, and generally does result in individual loss and injury, for which no legal means of relief are provided.

It follows that in the grant made to the Rough creek company the state entered into no agreement, express or implied, that there should be no impairment of the profits of the franchise by any change which the state might choose to make in the rate of tolls on either of the rivers. On the contrary, those rates on both rivers were expressly placed within the uncontrolled discretion of the legislature. The Rough creek company was given power to demand tolls "not exceeding those upon Green river, and at all times subject to the revision of the Board of Internal Improvement." The tolls upon Green river were, at the time, under the control of the same board, which was a mere agency of the state. The wisdom of the law under which the tolls on Green river were increased may be questionable, but the power of the legislature to pass it seems undoubted.

The judgment is *reversed* on the original appeal, and *affirmed* on the cross-appeal, and the cause remanded with directions to sustain the general demurrer to the petition and to dismiss the action.

*T. E. Moss, P. W. Hardin, for appellant.*

*W. N. Sweeney & Son, E. D. Walker, for appellees.*